## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Energy West, Inc.<br><br>　　　　Plaintiff,<br>vs.<br><br>United States Power Fund, LP, et al.<br><br>　　　　Defendant. | CASE NO. 1:09-cv-00591<br><br>JUDGE Christopher Boyko<br><br>**AFFIDAVIT OF MICHAEL GORMAN** |

STATE OF OHIO　　　　　)
　　　　　　　　　　　　) SS:　　**AFFIDAVIT OF MICHAEL GORMAN**
COUNTY OF　　　　　　 )

　　　　The undersigned, Michael Gorman, being first duly sworn, deposes and states of his own personal knowledge:

　　　　1.　　I am of sound mind and over the age of eighteen.

　　　　2.　　I have represented Energy West, Inc. (hereinafter "Plaintiff" in connection with the negotiations between Plaintiff Energy West, Inc. (hereinafter "Plaintiff") and Defendant United States Power Fund (hereinafter "USPF").

　　　　3.　　USPF had entered into a loan with new party Defendant Loring Bioenergy, LLC (hereinafter "LBE").

　　　　4.　　LBE had given USPF a lien on a pipeline lease it held as collateral for the loan.

　　　　5.　　The proposed transaction between Plaintiff and USPF involved USPF assigning its interest to the loan to Plaintiff.



6. Plaintiff's ultimate intention was to gain control of the pipeline and, had the original transaction closed, intended to foreclose on the leasehold interest which was collateral for the loan.

7. The loan documents between USPF and LBE provides as follows with respect to the right of USPF to assign the loan:

> No party may sell, assign, or transfer this Agreement or any portion hereof, including, without limitation, Borrower's rights, title, interest, remedies, powers, liabilities, obligations and/or duties hereunder except that Lender may assign (including collaterally) this Agreement, or any portion of this Agreement to any (i) Lender Affiliate without the consent of the Borrower or (ii) to an unaffiliated third party, with the consent of the Borrower, such consent not be unreasonably withheld or delayed.

8. The original 2008 transaction failed when LBE refused to give its consent to this transaction, and instead presented a new group of affiliated investors to the table to negotiate with USPF.

9. Plaintiff initially brought this litigation against USPF based on allegations that USPF had represented to Plaintiff that it could obtain the approval of LBE.

10. Plaintiff expended considerable time and effort in pursuing the transaction based on this representation. When LBE ultimately refused to give the consent, Plaintiff initiated this action to pursue those costs.

11. At the time the initial transaction fell apart it had been suggested that LBE had found an alternative purchaser that may have involved a related entity.

12. During mediation in this litigation it was learned that this other transaction never transpired.

13. As a result, this litigation was stayed and USPF and Plaintiff restarted negotiations regarding the underlying transaction.

14. The initial transaction contemplated in 2011 would have involved Plaintiff directly acquiring the sublease from LBE and negotiating a payoff of the loan with USPF. This three party transaction, however, could not be consummated.

15. Once it became clear that the three party transaction involving LBE, USPF and Plaintiff could not be consummated, Plaintiff and USPF returned to discussions involving the original 2008 transaction that would involve Plaintiff acquiring the loan documents.

16. USPF indicated that it would go forward with a transaction of this nature based on the same financial terms as the proposed three-party transaction. In other words, rather than Plaintiff paying the funds to USPF as the Subleasor and paying off the Loan, Plaintiff would pay these funds to USPF to obtain an assignment of the Loan so it could foreclose on the collateral and acquire the pipeline lease in that fashion.

17. Because of the language contained in the Loan documents referenced above regarding LBE's need to consent to the assignment, USPF will not proceed with this transaction unless it obtains LBE's consent to the assignment.

18. I have been attempting to contact LBE and its representatives since October 10, 2011, to inquire regarding obtaining LBE's consent to this transaction.

19. On October 18, 2011, LBE's representative advised Mr. Gorman through a text that LBE would not be engaging in any conversations regarding consent to the assignment before the end of October, 2011.

20. Based on the language contained in the loan documents that prohibits LBE from unreasonably withholding or delaying its consent, Plaintiff believes that LBE is tortuously interfering with Plaintiff's perspective contract and/or business relationship with USPF.

3

21. Moreover, Plaintiff believes that LBE may be dealing with other parties in an attempt to engage in transactions that would interfere with Plaintiff's perspective contractual rights with USPF.

22. Plaintiff is seeking a temporary restraining order to maintain the status quo until such time as the court can deal with Plaintiff's contention that LBE is tortuously interfering with its contractual relationship with USPF by unreasonably withholding and/or delaying its consent to the proposed assignment.

23. Plaintiff and USPF are prepared to proceed with a transaction whereby USPF would assign its interest in the loan documents and the collateral owned by LBE to Plaintiff.

24. The only item preventing this transaction from going forward is LBE's refusal to provide consent.

25. LBE is contractually obligated to not unreasonably withhold or delay its consent.

26. Notwithstanding that contractual obligation, LBE is refusing to provide the consent or even discuss the matter with Plaintiff's representatives.

27. LBE's breach of its contractual obligations to provide the consent renders its interference with Plaintiff and USPF's perspective contractual relationship as tortuous.

28. LBE is in default of its financial obligations pursuant to the Loan from USPF.

29. Plaintiff alleges that it will suffer irreparable injury if LBE and/or USPF are allowed to go forward with another transaction.

30. Plaintiff is attempting to introduce natural gas service into a market which does not currently have it. The only practical avenue for doing so is through acquisition of this pipeline.

31. LBE has been in default of its obligations under the Loan Documents for a number of years, which is ultimately what has given rise to USPF's willingness to assign the Note.

32. Plaintiff would be unable to make itself whole on any claims against LBE arising of out of LBE's preventing this transaction from going forward, because of their lack of financial means.

FURTHER AFFIANT SAYETH NAUGHT.

_____
MICHAEL GORMAN

SWORN TO BEFORE ME, and subscribed in my presence on October 26, 2011.

_____
NOTARY PUBLIC
My Commission Expires: 12-22-14

CURTIS D BEST
Notary Public
Durham County
North Carolina
My Commission Expires Dec 22, 2014