UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ENERGY WEST, INCORPORATED,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES POWER FUND, L.P.,<br><br>        Defendant. | Civ. No. 1:09-cv-00591<br>Judge Christopher A. Boyko |

**MEMORANDUM OF LAW (1) IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND FOR LEAVE TO FILE ITS SUPPLEMENTAL COMPLAINT; AND (2) <u>IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>**

VORYS, SATER, SEYMOUR & PEASE LLP
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, OH 44114
(216) 479-6100

Of Counsel:

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 408-5100

*Attorneys for Defendant*
*United States Power Fund, L.P.*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

BRIEF PROCEDURAL AND FACTUAL BACKGROUND .................................................2

  A. The 2008 Term Sheet Expires and Energy West Commences this Action ............2

  B. The Court Grants USPF's Motion to Dismiss
    in Part and the Parties Resume Negotiations ......................................................3

  C. The 2011 Term Sheet also Expires without Energy West
    Consummating the Proposed Transaction, Triggering
    Energy West's Binding Obligation to Dismiss this Action ..................................4

ARGUMENT ..........................................................................................................................6

  I. ENERGY WEST HAS NOT DEMONSTRATED AN
    ENTITLEMENT TO A PRELIMINARY INJUNCTION
    AND ITS MOTION SHOULD BE DENIED ........................................................6

    A. Energy West's Tortious Interference Claim
      against LBE is Highly Unlikely to Succeed .............................................7

    B. Any Harm to Energy West in the Absence of a Preliminary
      Injunction Would Be Compensable in Money Damages
      and, Accordingly, Not Irreparable ..........................................................10

    C. The Preliminary Injunction Requested by
      Energy West Threatens Substantial Harm to USPF ................................11

    D. The Public Interest Would Not Be Served
      by Granting the Preliminary Injunction ..................................................12

  II. ENERGY WEST AGREED TO VOLUNTARILY DISMISS ITS
    CLAIMS AGAINST USPF AND, ACCORDINGLY, LEAVE TO
    FILE A SUPPLEMENTAL COMPLAINT SHOULD BE DENIED
    AND THE COMPLAINT DISMISSED ...............................................................12

CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&B-Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*,
73 Ohio St. 3d 1, 651 N.E.2d 1283 (Ohio 1995) ................................................................... 7

*Bell v. LE-GE, Inc.*, 20 Ohio App. 3d 127, 485 N.E.2d 282 (Ohio Ct. App. 1985) ....................... 9

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 692 F. Supp. 2d 805 (N.D. Ohio 2010) ...................... 10

*Bowman v. Marshall*, 1990 Ohio App. LEXIS 4588 (Ohio Ct. App. Oct. 22, 1990) ..................... 8

*Cincinnati Indus. Mach., Inc. v. VMI Holland BV*,
2010 U.S. Dist. LEXIS 21683 (S.D. Ohio Feb. 17, 2010) ..................................................... 12

*Clippard Instrument Laboratory, Inc. v. Norman Equip. Co.*,
1983 U.S. Dist. LEXIS 19534 (S.D. Ohio Feb. 3, 1983) ....................................................... 10

*Donald G. Culp Co. v. Reliable Stores Corp.*,
14 Ohio App. 3d 161, 470 N.E.2d 193 (Ohio Ct. App. 1983) ................................................ 9

*Extracorporeal Alliance, LLC v. Rosteck*, 285 F. Supp. 2d 1028 (N.D. Ohio 2003) ................... 11

*Hoyt, Inc. v. Gordon & Associates, Inc.*,
104 Ohio App. 3d 598, 662 N.E.2d 1088 (Ohio Ct. App. 1995) ............................................. 8

*Juhasz v. Quik Shops, Inc.*, 55 Ohio App. 2d 51, 379 N.E.2d 235 (Ohio Ct. App. 1977) ............. 7

*Kand Med., Inc. v. Freund Med. Prods., Inc.*, 963 F.2d 125 (6th Cir. 1992) ................................ 8

*Langley v. Prudential Mortgage Capital Co.*, 554 F.3d 647 (6th Cir. 2009) ............................... 10

*MAR Oil Co. v. Korpan*, 2011 U.S. Dist. LEXIS 121706 (N.D. Ohio Oct. 20, 2011) ............ 6, 12

*Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*,
945 F.2d 150 (6th Cir. 1991) ............................................................................................. 10-11

*Mich. State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997) .................................................... 7

*Moore v. U.S. Postal Serv.*, 369 Fed. Appx. 712 (6th Cir. 2010) ................................................ 12

*N.E. Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999 (6th Cir. 2006) ..................... 7

*Walter v. Murphy*, 61 Ohio App. 3d 553, 573 N.E.2d 678 (Ohio Ct. App. 1988) ........................ 9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ENERGY WEST, INCORPORATED,<br><br>         Plaintiff,<br><br>    v.<br><br>UNITED STATES POWER FUND, L.P.,<br><br>         Defendant. | Civ. No. 1:09-cv-00591<br>Judge Christopher A. Boyko |

**MEMORANDUM OF LAW (1) IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND FOR LEAVE TO FILE ITS SUPPLEMENTAL COMPLAINT; AND (2) IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

  Defendant United States Power Fund, L.P. ("USPF") respectfully submits this memorandum of law, and the declaration of John Winship Read dated November 9, 2011 (the "Read Decl.") with the exhibits attached thereto, (1) in opposition to plaintiff Energy West, Incorporated's ("Energy West") motions for a temporary restraining order and preliminary injunction, and for leave to file its proposed supplemental complaint; and (2) in support of USPF's motion to dismiss the complaint.

**PRELIMINARY STATEMENT**

  USPF is a lender to putative defendant Loring BioEnergy, LLC ("LBE") pursuant to the terms of a 2005 loan agreement. LBE in turn is the lessee of certain rights and obligations concerning a natural gas pipeline located in Maine (the "Pipeline Assets"). Since 2008, USPF has negotiated in good faith toward an agreement that would effectively result in the transfer of control over the Pipeline Assets to Energy West. During that time, USPF and Energy West

1

signed two term sheets that each granted Energy West an exclusive time period in which to conduct due diligence and consider the respective transaction proposed thereby.  On both occasions, Energy West allowed the term sheet to expire without electing to consummate the proposed transaction.  Now, Energy West alleges certain "tortious interference" by LBE (but no wrongdoing by USPF) and seeks a preliminary injunction that would *force* USPF and LBE to deal only with Energy West for an indefinite period of time.

While USPF takes no position concerning the accuracy of any of Energy West's allegations against LBE, USPF nonetheless submits that Energy West's motion for a temporary restraining order and preliminary injunction is defective on its face and should be denied by this Court.  USPF remains willing to consider further negotiations toward a possible transaction with Energy West that would be beneficial to all parties, but should *not* be shackled to open-ended negotiations with Energy West without the ability to consider and act on alternative (and perhaps superior) transactions with one or more third parties.

Moreover, Energy West's separate motion for leave to file its proposed supplemental complaint should be denied because that complaint purports to preserve Energy West's existing claims against USPF, notwithstanding that *Energy West has agreed in writing to the voluntary dismissal of all such claims*.  For that same reason, USPF respectfully requests that the existing Complaint in this action be dismissed with prejudice.

### BRIEF PROCEDURAL AND FACTUAL BACKGROUND

A.  **The 2008 Term Sheet Expires and Energy West Commences this Action**

In 2005, USPF entered into a loan agreement with LBE, which was memorialized in a series of documents (collectively, the "Loan Agreement").  (Complaint & Answer ¶¶ 7-8.)  By that agreement's terms, USPF cannot assign or transfer its interest in the Loan Agreement to any

third party without LBE's consent, which is not to be unreasonably withheld or delayed. (Complaint & Answer ¶ 12.)

In 2008, negotiations began between USPF and Energy West, whereby USPF would assign or transfer its interest under the Loan Agreement to Energy West. (Complaint & Answer ¶ 11.) In October 2008, USPF and Energy West memorialized those negotiations in a non-binding term sheet (the "2008 Term Sheet"), which provided Energy West with a 60-day due diligence period (later extended for an additional 30 days) during which Energy West had the option to provide written notice of its intent to consummate the proposed transaction. (Complaint & Answer ¶¶ 15-16, 20.) The 2008 Term Sheet expired without Energy West providing such notice. (Answer ¶ 21.)

On March 18, 2009, Energy West commenced this action with the filing of the Complaint. (Exh. A.)[1] The Complaint alleged claims for breach of contract, promissory estoppel, fraudulent misrepresentation, quasi-contract, negligent misrepresentation, and breach of fiduciary duty against USPF arising out of the expiration of the 2008 Term Sheet. (Complaint & Answer ¶¶ 30-61.) USPF moved to dismiss the Complaint for failure to state a claim on May 13, 2009. [Docket No. 11.]

**B.    The Court Grants USPF's Motion to Dismiss
       in Part and the Parties Resume Negotiations**

On March 29, 2010, the Court issued an Opinion and Order granting USPF's motion to dismiss as to Energy West's claims for breach of contract, quasi-contract, and breach of fiduciary

---

[1]    All citations to "Exh." refer to exhibits to the Read Declaration.

3

duty. (Exh. B.) The Court explained that Energy West "was required to provide notice of its intent to purchase USPF's loan rights and interests before the expiration of the Due Diligence Period – and did not." (*Id.* at 6.) Accordingly, "[b]y the express language of the [2008] Term Sheet, there is no contract between [Energy West] and USPF." (*Id.* at 5.) "Accepting the allegations of [Energy West's] Complaint as true, and construing them liberally in favor of [Energy West]," the Court denied USPF's motion to dismiss as to Energy West's remaining claims. (*Id.* at 7.) On July 12, 2010, USPF filed its Answer to Energy West's surviving allegations. (Exh. C.)

By order dated July 15, 2010, the Court granted the parties' joint motion to refer their dispute to the district court's mediation program. [Docket No. 26.] Thereafter, USPF, Energy West, and LBE resumed negotiations toward a possible business transaction. (Supp. Complaint ¶¶ 34-35.)

C. **The 2011 Term Sheet also Expires without Energy West Consummating the Proposed Transaction, Triggering Energy West's Binding Obligation to Dismiss this Action**

On July 5, 2011, additional negotiations between USPF, Energy West, and LBE culminated in the execution of a second term sheet (the "2011 Term Sheet"). (Exh. D; Supp. Complaint ¶ 43.) Unlike the 2008 Term Sheet, the 2011 Term Sheet proposed that Energy West would purchase the Pipeline Assets directly from LBE. (Exh. D § 3; Supp. Complaint ¶¶ 37-39.) This time, Energy West was provided with a 45-day due diligence period during which it had the option to provide written notice of its intent to consummate the proposed transaction with LBE. (Exh. D § 4; Supp. Complaint ¶ 45.)

Under the 2011 Term Sheet, USPF promised and agreed that during the due diligence period it would "discontinue any ongoing negotiations or discussions and shall not initiate

4

negotiations or discussions . . . relating to the sale or assignment of the Existing Pipeline Assets to any party other than [Energy West]." (Exh. D § 4.) Energy West does not dispute that USPF complied with its obligations under the 2011 Term Sheet. In consideration for USPF's promises, Energy West promised and agreed that it would dismiss the Complaint with prejudice and provide USPF with a complete release of any other possible present or future claims by Energy West. (Exh. D § 9.) Section 9 of the 2011 Term Sheet reads in relevant part as follows:

> "Upon expiration of the Due Diligence Period pursuant to Section 4 hereof . . . [Energy West] will file a Stipulation of Dismissal of all claims made by [Energy West] against USPF in [this] Litigation, with prejudice, and provide USPF and its affiliates a complete release from any and all claims [Energy West] may have in respect of any prior dealings with USPF or its affiliates relating to the Loring BioEnergy project. Forms of the Stipulation of Dismissal and USPF Release are attached hereto. . . . The covenants contained in this Section 9 of this Term Sheet shall be binding upon the parties." (*Id.*)

Moreover, Section 4 of the 2011 Term Sheet emphasizes that:

> "If [Energy West] fails to provide the Notice [in writing of its intent to consummate the proposed transaction] to LBE and USPF prior to the end of the Due Diligence Period, then upon expiration of the Due Diligence Period this Term Sheet shall terminate and, *except as provided in Section 9* . . . below [concerning the dismissal with prejudice of this action], the Parties shall have no further obligations to the other hereunder." (Exh. D § 4 (emphasis added).)

As Energy West concedes, it did not provide the required written notice of its intent to consummate the transaction proposed by the 2011 Term Sheet before the expiration of the 45-day due diligence period on August 19, 2011. (Supp. Complaint ¶¶ 44-48, 50.) Accordingly, the 2011 Term Sheet expired without any further obligations among the parties *except* Energy West's binding obligation to file the stipulation of voluntary dismissal of this action and deliver the executed release to USPF. (Exh. D §§ 4, 9.) To date, Energy West has not complied with that obligation.

Since the expiration of the 2011 Term Sheet's due diligence period, the parties have continued to discuss possible transactions. On October 26, 2011, Energy West moved for leave

5

from this Court to file a proposed supplemental complaint, which seeks to add a cause of action against LBE alleging that LBE tortiously interfered with Energy West's recent negotiations with USPF. (Exh. E, Supp. Complaint ¶¶ 80-86.) Energy West principally alleges that LBE "refus[ed] to approve [an] assignment of the Loan Agreement" from USPF to Energy West. (*Id.* at ¶ 57.) By separate motion also filed on October 26, 2011, Energy West requested a temporary restraining order and preliminary injunction that would prevent USPF or LBE from pursuing an alternative transaction with "any third party except [Energy West]." (*Id.* at p. 12 (*ad damnum*).) USPF now opposes Energy West's motions and requests dismissal of the Complaint with prejudice.

## ARGUMENT

### I.

### ENERGY WEST HAS NOT DEMONSTRATED AN ENTITLEMENT TO A PRELIMINARY INJUNCTION AND ITS MOTION SHOULD BE DENIED

While USPF is more than willing to deal with Energy West or any other party that demonstrates an ability to consummate an acceptable transaction, USPF does not believe that Energy West is entitled to any injunctive relief, and opposes such relief for a host of factual and legal reasons. "A preliminary injunction is an extraordinary remedy, and [the Court] may grant it only if the moving party clearly and convincingly proves the need for it." *MAR Oil Co. v. Korpan*, 2011 U.S. Dist. LEXIS 121706, at *7 (N.D. Ohio Oct. 20, 2011). A party requesting a temporary restraining order or preliminary injunction must make such a showing with respect to each of the following factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury in the absence of an injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) whether the

public interest would be served by granting the injunction. *See N.E. Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (cited at Pls. Br. at 4).[2] Energy West has failed to meet its burden with respect to *any* of these four factors and is not entitled to a preliminary injunction that would improperly injure USPF's clear contract rights.

### A. Energy West's Tortious Interference Claim against LBE is Highly Unlikely to Succeed

Energy West's motion does not demonstrate a likelihood of success on the merits – let alone the required "strong" likelihood of success – of its claim that LBE "intentionally and tortuously interfered with [Energy West's] business relationship and/or prospective contract with USPF." (Supp. Complaint ¶ 83.)  This Court should deny Energy West's motion for that reason alone and need not consider any of the three other preliminary injunction factors. *See Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997) ("[A] preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

As a preliminary matter, to succeed on such a claim would require, *inter alia*, proof that LBE acted "without privilege" (*i.e.*, without any legitimate interest) concerning the possible assignment of the Loan Agreement and transfer of the Pipeline Assets. *See A&B-Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14, 651 N.E.2d 1283, 1294 (Ohio 1995) (cited at Pls. Br. at 5); *Juhasz v. Quik Shops, Inc.*, 55 Ohio App. 2d 51, 56-57, 379 N.E.2d 235, 238-39 (Ohio Ct. App. 1977).  LBE, however, is the borrower under the Loan

---

[2] All citations to "Pls. Br." refer to Energy West's memorandum of law in support of its motion for temporary restraining order and preliminary injunction, dated October 26, 2011. [Docket No. 44.]

7

Agreement and the leaseholder of the Pipeline Assets and has a legitimate business interest in any such transaction. (Complaint & Answer ¶¶ 7, 14.) Indeed, as Energy West acknowledges, the Loan Agreement expressly requires the "consent of the Borrower" (*i.e.*, LBE) as a precondition for the lender's (*i.e.*, USPF's) assignment of the Loan Agreement to any "unaffiliated third party" (*e.g.*, Energy West).[3] (Pls. Br. at 2; Complaint & Answer ¶ 12.)

Ohio law is well-settled that the advancement of legitimate business interests through lawful means is not tortious. *See Kand Med., Inc. v. Freund Med. Prods., Inc.*, 963 F.2d 125, 127-28 (6th Cir. 1992) (affirming dismissal of tortious interference claim in part because defendant "was privileged because it did not intend to harm [plaintiff] and was only acting to further its legitimate economic interests"); *Hoyt, Inc. v. Gordon & Associates, Inc.*, 104 Ohio App. 3d 598, 605-06, 662 N.E.2d 1088, 1092-93 (Ohio Ct. App. 1995) ("In some instances, advancement of bona fide business interests is not improper interference. . . . [Defendant] did not act improperly and was, therefore, privileged in causing San Joaquin to discontinue its brokerage agreement with [plaintiff]. The record before this court reveals that [defendant] acted to influence San Joaquin's business policy concerning San Joaquin's future performance of brokerage agreements as it relates to [defendant's] purchase of fig paste. Thus, [defendant] has an economic interest in who provides brokerage services to San Joaquin."); *Bowman v. Marshall*, 1990 Ohio App. LEXIS 4588, at *3 (Ohio Ct. App. Oct. 22, 1990) ("Advancement of bona fide

---

[3] USPF does not at this time take a position concerning whether LBE's alleged "refusal to approve the assignment of the Loan Agreement" (Supp. Complaint ¶ 57) would under the circumstances constitute consent "unreasonably withheld or delayed" pursuant to the Loan Agreement. USPF and LBE – not Energy West – are parties to the Loan Agreement and any dispute among the parties concerning its terms would sound in contract, not tort.

8

business interests privileges any interference not tainted by unlawful means."); *Walter v. Murphy*, 61 Ohio App. 3d 553, 556-57, 573 N.E.2d 678, 680 (Ohio Ct. App. 1988) (affirming dismissal of tortious interference claim in part because "the situation in the instant case was nothing more than a competitive bidding situation" involving parties "properly competing with the [plaintiffs] for Blanchard's home"); *Bell v. LE-GE, Inc.*, 20 Ohio App. 3d 127, 132, 485 N.E.2d 282, 287 (Ohio Ct. App. 1985) ("Plaintiffs had a privilege to discourage the prospective contract which they believed in good faith would impair their own legally protected interests. They could properly do so by asserting or threatening to protect properly their lawful interests."); *Donald G. Culp Co. v. Reliable Stores Corp.*, 14 Ohio App. 3d 161, 164, 470 N.E.2d 193, 197 (Ohio Ct. App. 1983) (reversing judgment on tortious interference claim in part because "[defendant's] refusal to consent [to the sublease] unless a restoration bond was provided was reasonably designed to protect [defendant's] legitimate interest in the property"). Thus, even assuming *arguendo* that LBE's "refusal to approve the assignment of the Loan Agreement" is cognizable as "interference," Energy West would still be highly unlikely to succeed on their tortious interference claim against LBE, as LBE clearly has a legitimate business interest in the subject matter of the alleged "interference." (Supp. Complaint ¶¶ 57, 83.)

Moreover, Energy West has failed to demonstrate, as it must, that the alleged tortious interference by LBE was the proximate cause of Energy West's failure to date to obtain control over the Pipeline Assets. *See Donald G. Culp Co.*, 14 Ohio App. 3d at 164, 470 N.E.2d at 197 (reversing judgment on tortious interference claim in part because "[defendant's] refusal to consent to the sublease without a bond [where the lease provided that defendant's consent could not be unreasonably withheld] was not the proximate cause of [plaintiff's] failure to finalize the Jackson sublease"). As Energy West concedes, it did not provide written notice of its intent to

9

consummate the transaction contemplated by the 2011 Term Sheet prior to the expiration of the due diligence period. (Supp. Complaint ¶¶ 44-48, 50.) If Energy West had provided such notice, then it could have obtained LBE's rights to the Pipeline Assets *directly* from LBE. (Exh. D §§ 4-5.) Energy West has again missed a contractually-set deadline for action and USPF should not be forced to forego all other options it may have to sell its interest in this matter simply because Energy West wants yet another chance to buy control of the Pipeline Assets.

**B.  Any Harm to Energy West in the Absence of a Preliminary Injunction Would Be Compensable in Money Damages and, Accordingly, Not Irreparable**

Energy West also has not met its burden to substantiate its allegation that "it will suffer irreparable injury if LBE and/or USPF are allowed to go forward with another transaction." (Pls. Br. at 6.) "The general rule is that a plaintiff's harm is not irreparable if it is fully compensable by money damages." *Langley v. Prudential Mortgage Capital Co.*, 554 F.3d 647, 649 (6th Cir. 2009) (quotation marks omitted). Any alleged loss of profits resulting from Energy West's failure to obtain rights to operate the natural gas pipeline would be compensable as money damages and, accordingly, a preliminary injunction is not warranted. *See Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 692 F. Supp. 2d 805, 822 (N.D. Ohio 2010) (denying motion for preliminary injunction in part because "there has been no showing that [plaintiff's] lost sales cannot be adequately compensated by money damages" and "[p]ast lost profits and future lost profits can be determined and awarded"); *Clippard Instrument Laboratory, Inc. v. Norman Equip. Co.*, 1983 U.S. Dist. LEXIS 19534, at *18-19 (S.D. Ohio Feb. 3, 1983) ("[I]t is axiomatic that lost sales and profits do not constitute irreparable injury, since they are compensable in money damages."). The mere speculation of Energy West's representative Michael Gorman that LBE "lack[s] . . . financial means" (Gorman Aff. ¶ 32) to pay a future judgment is not sufficient to warrant an exception to that rule. *See Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*,

10

945 F.2d 150, 154 (6th Cir. 1991) ("[T]he harm alleged must be both certain and immediate, rather than speculative or theoretical.").

    **C.    The Preliminary Injunction Requested by Energy West Threatens Substantial Harm to USPF**

Energy West's contention that the issuance of a preliminary injunction will not cause "any harm to any third party" (Pls. Br. at 6) ignores the very real harm such an injunction would cause to USPF. *See Extracorporeal Alliance, LLC v. Rosteck*, 285 F. Supp. 2d 1028, 1045 (N.D. Ohio 2003) ("[T]his Court must consider whether the preliminary injunction would harm *the party enjoined* or others, and if so, whether such harm outweighs any irreparable harm established by the party seeking the injunction.") (emphasis added). Energy West requests an injunction that would indefinitely prevent USPF or LBE "from selling or transferring any direct or indirect interest in the Pipeline or in the Loan Documents to any third party except to [Energy West]." (Supp. Complaint at p. 12 (*ad damnum*).) Over an extended period of time, USPF has negotiated in good faith towards a possible transaction with Energy West only to repeatedly see those negotiations collapse due to the inability or unwillingness of Energy West to close. USPF should not now be forced to forego all other possible alternatives while waiting yet longer for the closing of a transaction with Energy West that may never be consummated, particularly where all parties agree that the due diligence period authorized by the 2011 Term Sheet has expired. (Supp. Complaint ¶¶ 44-48, 50.)

In light of the harm that will be caused by the requested preliminary injunction to USPF, LBE, and any third parties with an interest in pursuing a possible transaction for control of the Pipeline Assets, Energy West "must make an even stronger showing on the other factors to justify its issuance." *See Rosteck*, 285 F. Supp. 2d at 1045. Energy West has not met that burden.

11

### D. The Public Interest Would Not Be Served by Granting the Preliminary Injunction

Energy West's unsupported assertion that its "acquisition of this pipeline would benefit the public at large by expanding the availability of natural gas service" (Pls. Br. at 6-7) does not weigh in favor of the issuance of a preliminary injunction. Even assuming *arguendo* that this Court were to recognize a public interest in the transfer of the Pipeline Assets to a third party, an order enjoining USPF and LBE from transferring those assets "to any third party except to [Energy West]" would not serve that interest. (Supp. Complaint at p. 12 (*ad damnum*).) Such an injunction would only decrease the available number of potential suitors for the Pipeline Assets – to one – without any guarantee that Energy West would consummate the transfer. By contrast, denying the requested injunction would serve the well-recognized public interest in freedom of contract. *See MAR Oil Co.*, 2011 U.S. Dist. LEXIS 121706, at *15 (denying motion for preliminary injunction in part because "[a] court sitting in equity does not . . . serve the public interest by ordering an involuntary reassignment of contractual rights to a party not in privity to the original contract"); *Cincinnati Indus. Mach., Inc. v. VMI Holland BV*, 2010 U.S. Dist. LEXIS 21683, at *41 (S.D. Ohio Feb. 17, 2010) (denying motion for preliminary injunction and noting that public interest in "the right to contract freely is well established").

## II.

### ENERGY WEST AGREED TO VOLUNTARILY DISMISS ITS CLAIMS AGAINST USPF AND, ACCORDINGLY, LEAVE TO FILE A SUPPLEMENTAL COMPLAINT SHOULD BE DENIED AND THE COMPLAINT DISMISSED

Energy West's motion for leave to file its proposed supplemental complaint should be denied and the existing Complaint dismissed with prejudice because Energy West agreed in writing to the voluntary dismissal of its claims against USPF. *See Moore v. U.S. Postal Serv.*, 369 Fed. Appx. 712, 717 (6th Cir. 2010) ("[A] district court has the inherent authority and

equitable power to enforce agreements in settlement of litigation before it . . . .") (quotation marks omitted). In the 2011 Term Sheet, Energy West promised and agreed that upon the expiration of the 45-day due diligence period (*i.e.*, August 19, 2011), it would file a stipulation of dismissal with prejudice of all claims in this action *notwithstanding whether the proposed transaction between Energy West and LBE was ever consummated*. (Exh. D § 9.)

Specifically, Section 9 of the 2011 Term Sheet states that "[u]pon expiration of the Due Diligence Period . . . [Energy West] will file a Stipulation of Dismissal of all claims made by [Energy West] . . . in [this action], with prejudice, and provide USPF and its affiliates a complete release from any and all claims [Energy West] may have in respect of any prior dealings with USPF or its affiliates relating to the Loring BioEnergy project." (*Id.*) Energy West admits that the due diligence period expired and that it did not provide the written notice required to consummate the proposed transaction before that expiration. (Supp. Complaint ¶¶ 44-48, 50.) Accordingly, the dismissal with prejudice of the Complaint is now overdue and Energy West should not be permitted to file a supplemental complaint preserving claims against USPF that it agreed to release.

## **CONCLUSION**

For the foregoing reasons, USPF respectfully requests that the Court (i) deny Energy West's motion for a temporary restraining order and preliminary injunction; (ii) deny Energy West's motion for leave to file its proposed supplemental complaint; (iii) grant USPF's motion to dismiss the Complaint with prejudice; and (iv) grant any and all other relief that the Court deems just and proper.

13

Dated: November 9, 2011

                           VORYS, SATER, SEYMOUR & PEASE LLP

By     *s/ John Winship Read*
           John Winship Read (0030827)
           Heather M. Lutz (0082237)
2100 One Cleveland Center
1375 East Ninth Street
Cleveland, OH  44114
Tel.:  (216) 479-6100
Fax:  (216) 479-6060
E-mail:  jwread@vorys.com
         hmlutz@vorys.com

Of Counsel:

Thomas J. McCormack
*Admitted Pro Hac Vice*
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
Tel.:  (212) 408-5100
Fax:  (212) 541-5369
E-mail:  tmccormack@chadbourne.com

*Attorneys for Defendant
United States Power Fund, L.P.*

14

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was sent via the Court's electronic filing system to all parties of record with the Court on November 9, 2011.  Notice of this filing will be served to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*s/ John Winship Read*
John Winship Read (0030827)
