# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ENERGY WEST, INCORPORATED<br>8500 Station Street<br>Mentor, Ohio 44060<br><br>      Plaintiffs,<br><br>vs.<br><br>UNITED STATES POWER FUND, L.P.,<br>c/o The Corporation Trust Company, as<br>Statutory Agent<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>and serve at:<br><br>One Penn Plaza, Suite 3306<br>250 West 34th Street<br>New York, NY 10119<br><br>      Defendant. | CASE NO.<br><br>JUDGE<br><br><br><br><br><br>**COMPLAINT**<br>**(Jury Demand)** |

Now comes Plaintiff, Energy West, Incorporated (hereinafter "Plaintiff"), by and through its undersigned counsel, Dworken & Bernstein Co., L.P.A. and for its complaint against Defendant, United States Power Fund, L.P. (hereinafter "Defendant"), states as follows:

**JURISDICTION AND VENUE**

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) on the grounds that, among other things, a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, including, but not limited to, face-to-face meetings of representatives of both parties.

## PRELIMINARY ALLEGATIONS

3. Plaintiff is a Montana corporation which has offices located at 8500 Station Street, Mentor, Ohio, 44060 and does business within the State of Ohio.

4. Plaintiff's primary business is selling and transporting natural gas.

5. Defendant is a Delaware Limited Partnership with its principal place of business located at One Penn Plaza, Suite 3306, 250 West 34th Street, New York, New York, 10119.

6. Defendant's primary business is loaning to and investing in power companies.

7. In June of 2005, Defendant entered into a loan transaction with a company known as Loring BioEnergy, LLC ("LBE"), whereby Defendant agreed to loan certain funds to LBE for purposes of developing a natural gas pipeline and a Co-Generation Power Plan (the "Project").

8. This loan transaction was memorialized by several documents executed between Defendant and LBE including a Development Loan Agreement dated June 2, 2005 (the "Loan Agreement") and an Equity Option Agreement dated June 2, 2005 (the "Option Agreement").

9. After the Loan Agreement and the Option Agreement were executed, Defendant distributed approximately Four Million Five Hundred Ninety Eight Thousand Dollars ($4,598,000.00) in loan proceeds to LBE in accordance with the terms of the Loan Agreement, as amended.

10. The original maturity date on the Loan Agreement was March 15, 2006, although, based primarily upon LBE's inability to make payment by the original maturity date, the maturity date was extended approximately eighteen times, with the final maturity date being set at or about January 31, 2009.

11. In 2008, Plaintiff commenced negotiations whereby Defendant would assign or transfer its interest under the Loan Agreement and the Option Agreement to Plaintiff (the "Transaction") in exchange for monetary consideration, thereby allowing Plaintiff so step into the shoes of Defendant as LBE's lender under the Loan Agreement.

12. Pursuant to its terms and conditions, Defendant was not permitted to assign or transfer the Loan Agreement to any third party, including Plaintiff, without LBE's consent, which consent could not be unreasonably withheld.

13. Defendant represented and stated to Plaintiff on numerous occasions that it had the leverage to secure LBE's consent to the assignment or transfer of the Loan Agreement.

14. The Transaction was extremely attractive to Plaintiff because once consummated it would allow Plaintiff to take control of approximately Two Hundred (200) miles of pipeline within the State of Maine (the "Pipeline"), which Plaintiff intended to convert to a natural gas pipeline which would allow Plaintiff to pursue a unique untapped market opportunity in a geographical area that does not currently have access to natural gas as a power source.

15. Plaintiff and Defendant's negotiations culminated in a Term Sheet between the parties dated October 6, 2008, whereby Defendant agreed to sell its rights and interests in the Loan Agreement and the Option Agreement to Plaintiff in exchange for a payment of Six Million Dollars ($6,000,000.00), payable partially in stock of Plaintiff and partially by a promissory note. A copy of the Term Sheet is attached hereto as Exhibit "A".

16. The Term Sheet also allowed for a sixty (60) day due diligence period during which Plaintiff was permitted to conduct a due diligence investigation relating to the Project (the "Due Diligence Period").

17. The Term Sheet also contained a binding "no shop" provision which stated as follows: "Upon the execution of this letter by both parties and continuing until the expiration of the Due Diligence Period, USPF shall discontinue any ongoing negotiations and discussions and shall not initiate negotiations or discussions, nor promote or encourage other persons or entities to submit proposals relating to the sale or assignment of its rights concerning LBE to any party other than Plaintiff."

18. Thereafter, in accordance with the terms and conditions of the Term Sheet, Plaintiff commenced its due diligence investigation of the Project.

19. Plaintiff's due diligence investigation included sending a team of employees and consultants to Maine to physically inspect the Project; an extensive review by Plaintiff's legal team of the complete legal issues surrounding the deal and the legal documents executed between LBE and LDA; and sending representatives to Maine to meet with potential customers along the Pipeline to obtain Letters of Intent confirming that said customers would purchase natural gas from Plaintiff once the Transaction was consummated.

20. On November 24, 2008, Defendant and Plaintiff agreed to extend the Due Diligence Period for an additional thirty (30) days through January 6, 2009.

21. At the conclusion of Plaintiff's due diligence investigation, Plaintiff and Defendant renegotiated new terms and conditions of the Transaction and agreed to the following: Plaintiff would purchase Defendant's rights under the Loan Agreement and the Option Agreement for a price of Four Million Five Hundred Thousand Dollars ($4,500,000.00), payable partially in Plaintiff common stock and partially by promissory notes.

4

22. This revised deal was also contingent upon Plaintiff obtaining LBE's consent to the transfer or assignment of the Loan Agreement to Plaintiff.

23. In accordance with its previous representation that it had the leverage to secure LBE's consent, Defendant agreed and represented that it would assist Plaintiff in negotiating with LBE to obtain its consent.

24. Thereafter, Plaintiff and Defendant did, in fact, commence joint negotiations with LBE to obtain LBE's consent to the transfer of the Loan Agreement to Plaintiff.

25. On March 5, 2009, during the course of the aforementioned negotiations, Defendant informed Plaintiff that it had received an offer from an unidentified third party to consummate the Transaction or a similar transaction on terms and conditions that were more favorable to Defendant than the terms agreed upon by Plaintiff.

26. On March 5, 2009, Defendant also informed Plaintiff that the other deal was more attractive to Defendant because Defendant LBE would consent to the transfer or assignment of the Loan Agreement to the unidentified third party, but would not consent to such a transfer or assignment to Plaintiff.

27. Although Defendant would not disclose the identity of this third party, Defendant did state to Plaintiff that the third party offer was from an affiliate of LBE and/or and affiliate of LBE's owners.

28. As a result of the foregoing offer, on March 10, 2009, Defendant unilaterally terminated the Transaction with Plaintiff.

29. It is apparent from Defendant's course of conduct that Defendant's sole intent and purpose during and after the course of negotiations was not to consummate a deal with Plaintiff,

5

but only to pressure LBE and or its owners and affiliates to put together a group of investors to purchase Defendant's rights under the Loan Agreement.

## COUNT I:  BREACH OF CONTRACT

30. Plaintiff restates and reavers the allegations set forth in the foregoing paragraphs of this Complaint.

31. Plaintiff and Defendant entered into the Term Sheet which contained a binding "no shop" provision.

32. Upon information and belief, Defendant breached the binding "no shop" provision contained in the Term Sheet by continuing to negotiate and discuss, and/or initiating negotiations and discussion and/or promoting or encouraging third parties to submit proposals relating to the sale or assignment of rights relating to LBE during the Due Diligence Period.

33. As a direct and proximate result of the aforementioned breach of contract, Plaintiff has suffered damages in an amount in excess of Seventh-Five Thousand Dollars ($75,000.00).

## COUNT II:  PROMISSORY ESTOPPEL

34. Plaintiff restates and reavers the allegations set forth in the foregoing paragraphs of this Complaint.

35. Defendant made representations to Plaintiff that it had the leverage and could secure LBE's consent to the transfer or assignment of the Loan Agreement to Plaintiff.

36. The foregoing representations constitute and declare an unambiguous promise.

37. Plaintiff relied upon these representations and promises made by Defendant by continuing to expend significant funds in connection with performing due diligence and continuing negotiations with third parties such as LBE.

38. Plaintiff's reliance of Defendant's representation was reasonable and foreseeable.

39. As a direct and proximate result of Plaintiff's reliance of Defendant's representations, Plaintiff has suffered injury and unjust loss as a result of its reliance upon Defendant's representations and promises in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT III: FRAUDULENT MISREPRESENTATION

40. Plaintiff restates and reavers the allegations set forth in the foregoing paragraphs of this Complaint.

41. Defendant made representations to Plaintiff that Defendant could secure LBE's consent to a transfer or assignment of the Loan Agreement to Plaintiff.

42. Defendant had knowledge that this representation was false and/or exercised recklessness or utter disregard as to the falsity of the statement.

43. Defendant made this misrepresentation with the intent to induce Plaintiff to rely upon the same.

44. Plaintiff justifiably relied upon the misrepresentation by expending a substantial amount of money conducting due diligence investigations relating to the Project and by continuing forward in fruitless negotiations with LBE regarding its continued involvement in the project.

45. Plaintiff suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) as a direct and proximate result of its reliance upon Defendant's misrepresentation.

## COUNT IV: QUASI-CONTRACT

46. Plaintiff restates and reavers the allegations set forth in the foregoing paragraphs of this Complaint.

47. Plaintiff conferred a benefit upon Defendant, *to wit:* Defendant used Plaintiff to secure a deal whereby an unidentified third party has agreed to purchase the Development Loan on terms and conditions more favorable than those agreed to between Plaintiff and Defendant.

48. Defendant had knowledge of the foregoing benefit and, in fact, it was Defendant's intent during the course of negotiations with Plaintiff to secure such a deal, not with Plaintiff, but with a third party.

49. Defendant has unjustly retained the foregoing benefit conferred by Plaintiff without justification.

50. As a direct and proximate result of the foregoing, Plaintiff has suffered damages, and Defendant has been unjustly enriched in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT V: NEGLIGENT MISREPRESNTATION

51. Plaintiff restates and reavers the allegations set forth in the foregoing paragraphs of this Complaint.

52. Defendant supplied false information to Plaintiff during the course of negotiations relating to the Transaction, *to wit:* Defendant misrepresented that it could secure LBE's consent to a transfer or assignment of the Loan Agreement to Plaintiff.

53. These statements were made during the course of a transaction in which Defendant had a pecuniary interest and were made to guide Plaintiff in connection with a business transaction.

8

54. Plaintiff reasonably and justifiably relied upon these statements by expending a substantial amount of money conducting due diligence investigations relating to the Project and by continuing forward in fruitless negotiations with LBE regarding its continued involvement in the Project.

55. Defendant failed to use reasonable care or competence in making these statements.

56. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT VI: BREACH OF FIDUCIARY DUTY

57. Plaintiff restates and reavers the allegations set forth in the foregoing paragraphs of this Complaint.

58. Defendant served as Plaintiff's agent for purposes of obtaining LBE's consent to the assignment of the Loan Agreement and Operating Agreement.

59. As its agent, Defendant owed a fiduciary duty to Plaintiff.

60. Defendant breached that fiduciary duty by failing to exercise good faith in connection with its negotiations with both Plaintiff and LBE in that Defendant's sole intent and purpose during and after the course of negotiations was not to consummate a deal with Plaintiff, but only to pressure LBE and or its owners and affiliates to put together a group of investors to purchase Defendant's rights under the Loan Agreement.

61. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

9

## **DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff Energy West, Incorporated demands judgment against Defendant United States Power Fund, L.P. as follows:

(a) compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00);

(b) consequential and incidental damages, including out-of-pocket expenses, attorney fees and court costs;

(c) punitive damages in an amount to be determined at trial;

(d) pre and post judgment interest; and

(e) such other and further relief as the Court may deem necessary or appropriate.

Respectfully submitted,

/s/ Richard N. Selby, II
RICHARD N. SELBY, II (0059996)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Email: *rselby@dworkenlaw.com*
Counsel for Plaintiff

### *JURY DEMAND*

Plaintiff hereby demands a trial of the foregoing action by a jury comprised of the maximum number of jurors permitted by law.

/s/ Richard N. Selby, II
RICHARD N. SELBY, II (0059996)
DWORKEN & BERNSTEIN CO., L.P.A.
Attorney for Plaintiff

73860 JLT

10