# EXHIBIT B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ENERGY WEST, INCORPORATED, | ) | CASE NO. 1:09CV591 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| UNITED STATES POWER FUND, L.P., | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon Defendant's Motion (ECF DKT #11) to

Dismiss the Complaint for Failure to State a Claim Upon Which Relief Can Be Granted. For

the following reasons, the Motion is granted in part and denied in part.

**I. FACTUAL BACKGROUND**

Plaintiff Energy West, Incorporated ("EW") is a Montana corporation, with offices in

Mentor, Ohio. EW's primary business is selling and transporting natural gas. Defendant

United States Power Fund, L.P. ("USPF") is a Delaware Limited Partnership, with its

principal place of business in New York. USPF's primary business is loaning to, and

investing in, power companies.

In June of 2005, USPF entered into a loan transaction with Loring BioEnergy, LLC ("LBE"); and USPF agreed to loan funds to LBE for purposes of developing a natural gas pipeline and power plant. Under this loan agreement, USPF could not assign or transfer the loan agreement to any third party, including EW, without LBE's consent, which could not be unreasonably withheld.

In 2008, EW and USPF began negotiations for the assignment or transfer of USPF's interest under the loan agreement to EW, allowing EW to step into the shoes of USPF as LBE's lender under the loan agreement. The transaction was appealing to EW in that it potentially would allow EW to control 200 miles of pipeline in an area of Maine that currently has no access to natural gas as a power source. EW alleges that USPF represented on numerous occasions that "it had the leverage to secure LBE's consent" to the assignment or transfer. (Complaint, ECF DKT #1 at ¶13).

The negotiations culminated in a Term Sheet, dated October 6, 2008, calling for the assignment of the loan agreement to EW in exchange for Six Million Dollars, payable partially in stock and partially by promissory note. The Term Sheet granted EW an exclusive "Due Diligence Period" of sixty days, which could be extended by agreement to ninety days: "During this period, EW will *at its own cost* conduct various evaluations of the pipeline including but not limited to analyses of condition, right of way and potential natural gas customers." (Emphasis added). (Complaint, ECF DKT #1, Exhibit A). In fact, the Due Diligence Period was extended through January 6, 2009. The Term Sheet further required:

> Upon the execution of this letter by both parties and continuing until the expiration of the Due Diligence Period, USPF shall discontinue any ongoing negotiations or discussions and shall not initiate negotiations for discussions, nor promote or encourage other persons or entities to submit proposals relating

to the sale or assignment of its rights concerning LBE to any party other than
EW. Additionally during this period, USPF will not agree to sell or assign any
of its rights concerning LBE to any other party.

With regard to EW's obligations:

On or prior to expiration of the Due Diligence Period, EW will notify USPF in
writing ("Notice") if it intends to purchase USPF's interests in and rights under
the Loan and Equity Option Agreement. Such Notice shall include EW's mark
up of the Purchase Agreement for USPF [sic] consideration. ***If EW fails to
provide Notice to USPF on or prior to the end of the Due Diligence Period
then neither Party shall have any further obligation to the other.***
(Emphasis added).

At the conclusion of the Term Sheet, under the caption <u>No Legal Obligation</u>, the document

provides:

Except to the extent provided in the Confidentiality Agreement, ***no Party will
have any obligation to the other until a definitive Purchase Agreement is
entered into by such Party*** and approved by such Party's Board of Directors
and thereafter only to the extent provided in such agreement. Each Party
reserves the right, in its sole discretion, to terminate the discussions
contemplated under this Term Sheet by written notice to the other party.
(Emphasis added).

In its Complaint, EW alleges its costly Due Diligence entailed sending a team of employees

and consultants to Maine to inspect the project; reviewing legal issues; and arranging for

representatives to meet with potential customers and obtain letters of intent to purchase

natural gas once the transaction is consummated. (Complaint, ECF DKT #1 at ¶19).

Although negotiations over price, as well as joint attempts to acquire LBE's consent,

continued for at least two months beyond January 6, 2009, no one disputes that EW never

notified USPF in writing of its intention to purchase USPF's interests and rights under the

loan agreement, nor did EW ever enter into a definitive purchase agreement approved by its

Board of Directors.

On March 10, 2009, USPF terminated negotiations with EW because USPF received a more attractive proposal from a third party to which LBE consented. EW alleges USPF's purpose was not to consummate a deal with EW at all, but to use EW to pressure LBE and/or its owners and affiliates to put together a group of investors to purchase USPF's rights under the loan agreement.

In its Complaint, EW alleges Breach of Contract (Count I); Promissory Estoppel (Count II); Fraudulent Misrepresentation (Count III); Quasi-Contract (Count IV); Negligent Misrepresentation (Count V); and Breach of Fiduciary Duty (Count VI).

## II. LAW AND ANALYSIS

### Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint and is granted when "accepting the allegations in the complaint as true and construing them liberally in favor of the plaintiff, the complaint fails to allege 'enough facts to state a claim for relief that is plausible on its face.'" *Ashmus v. Bay Vill. Sch. Dist. Bd. of Educ.,* 2007 U.S. Dist. LEXIS 62208 (N. D. Ohio 2007), *quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Claims alleged in the complaint must be "plausible," not merely "conceivable." *Id.* When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001).

Quite recently, the United States Supreme Court rendered its decision in *Ashcroft v.*

*Iqbal*, ____ U.S. ____, 129 S.Ct. 1937 (2009).  The Court, by Justice Kennedy, discussed

*Twombly* and provided additional analysis of the motion to dismiss standard:

> In keeping with these principles a court considering a motion to dismiss can
> choose to begin by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be supported
> by factual allegations.  When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they plausibly give
> rise to an entitlement to relief.

*Id.* at 1950.

**Breach of Contract**

Count I recites that EW and USPF entered into the Term Sheet, which contained a

binding "no shop" provision.  EW alleges "Defendant breached the binding 'no shop'

provision contained in the Term Sheet by continuing to negotiate and discuss, and/or

initiating negotiations and discussion and/or promoting or encouraging third parties to submit

proposals relating to the sale or assignment of rights relating to LBE during the Due Diligence

Period."  (Complaint, ECF DKT #1 at ¶32).

By the express language of the Term Sheet, there is no contract between EW and

USPF.  EW admits it did not notify USPF in writing on or before the expiration of the Due

Diligence Period (January 6, 2009) that it intended to purchase USPF's rights and interests in

the loan agreement.  Furthermore, despite negotiations that continued for two months beyond

that expiration date, no Purchase Agreement was ever executed between EW and USPF.  The

Term Sheet explicitly provides that upon EW's failure to provide timely notice, "neither Party

shall have any further obligation to the other."  Moreover, "no Party will have any obligation

to the other until a definitive Purchase Agreement is entered into by such Party and approved

by such Party's Board of Directors."

The Ohio Supreme Court has defined a "condition precedent" as a condition " * * * which is to be performed before the agreement of the parties becomes operative. A condition precedent calls for the performance of some act or the happening of some event after the contract is entered into, and upon the performance or happening of which its obligation is made to depend." *Mumaw v. Western & Southern Life Ins. Co.*, 97 Ohio St. 1 (1917); see also, *Troha v. Troha*, 105 Ohio App.3d 327 (1995). EW was required to provide notice of its intent to purchase USPF's loan rights and interests before the expiration of the Due Diligence Period ---- and did not. That act was a condition precedent to any contract between EW and USPF becoming operative. Even if the Court accepts the allegation that USPF "shopped" the loan agreement to third parties during the Due Diligence Period, no contract existed which could be breached. The Motion to Dismiss of Defendant USPF is granted as to Count I of Plaintiff's Complaint.

**Promissory Estoppel; Fraudulent Misrepresentation; Negligent Misrepresentation**

In each of these Counts, EW alleges USPF made representations that it had the leverage and could secure LBE's consent to the transfer or assignment of the loan agreement to EW. EW alleges the representations were material and unambiguous. Further, in reliance upon these representations, EW alleges it expended substantial funds in performing due diligence investigations and continuing with ultimately fruitless negotiations. An element of promissory estoppel is reasonable and foreseeable reliance. *Anderson, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003). Fraudulent misrepresentation and negligent misrepresentation claims require a showing of justifiable reliance. *Burr v. Board of Co. Comm'rs of Stark Co.*, 23 Ohio St.3d 69, 73 (1986); *Delman v. Cleveland Heights*, 41 Ohio

-6-

St.3d 1,4 (1989). EW does allege, with respect to each of these claims, that it acted in reliance upon the representations made by USPF.

Accepting the allegations of EW's Complaint as true, and construing them liberally in favor of EW, the Court finds EW has set forth plausible claims for promissory estoppel, fraudulent misrepresentation, and negligent misrepresentation. The Motion to Dismiss of Defendant USPF is denied as Counts II, III, and V of Plaintiff's Complaint.

**Quasi-Contract**

EW alleges that it conferred a benefit upon USPF, i.e., USPF used EW to secure a deal by which an unidentified third party agreed to purchase the development loan on terms and conditions more favorable than those agreed to between EW and USPF. Further, EW alleges USPF retained that benefit without justification.

The Ohio Supreme Court has held "[t]he purpose of the quasi-contract action is not to compensate the plaintiff for any loss or damage suffered by him[,] but to compensate him for the benefit he has conferred on the defendant," with the ensuing obligation on behalf of the recipient, "to pay the reasonable worth of the benefit received." *Auto Chem Laboratories, Inc. v. Turtle Wax, Inc.*, No. 3:07cv156, 2009 WL 3063422, at *4 (S.D.Ohio Sept. 21, 2009) (quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954)). It follows, then, that courts focus on the *value* of what was furnished to defendant, not the damages incurred by the plaintiff, as they would in a breach of express contract claim. See *id*.

Nowhere in EW's quasi-contract claim (Count IV) does EW indicate the value of the benefits allegedly conferred upon USPF. Rather, ¶50 of the Complaint simply states: "Plaintiff has suffered damages, and Defendant has been unjustly enriched in an amount in

excess of Seventy-Five Thousand Dollars ($75.000.00)." The Court is left to speculate as to the amount of value provided. While, at this juncture, EW need not allege the precise value of the benefits conferred, it must provide sufficient allegations giving rise to a plausible inference supporting its contention that the value EW provided to USPF far exceeded the value of what EW received in return. See *id.* (citing *Iqbal*, — U.S. —, 129 S.Ct. at 1949-50; *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Because EW fails to meet its burden, the Motion to Dismiss of Defendant USPF is granted as to Count IV of Plaintiff's Complaint.

## Breach of Fiduciary Duty

In the final Count of its Complaint at ¶58, EW alleges USPF "served as Plaintiff's agent for purposes of obtaining LBE's consent to the assignment of the Loan Agreement and Operating Agreement." EW also alleges USPF breached its fiduciary duty, as agent, by failing to exercise good faith in its negotiations with EW and LBE.

"Under Ohio law, fiduciary duties can arise either by law or by the operation of the relationship between the parties. *See Stone v. Davis*, 66 Ohio St.2d 74, 419 N.E.2d 1094, 1098 (1981)." *Greenberg v. The Life Insurance Company of Virginia*, 177 F.3d 507, 521 (6th Cir.1999). Fiduciary duties may arise within a relationship in which "there is a ... position of superiority or influence, acquired by virtue of [a] special trust." *Stone*, 66 Ohio St.2d at 74.

In the instant matter, EW has done nothing more than label USPF as its agent. EW fails to allege any special trust, superiority or influence possessed by USPF, which would take their interaction outside the scope of a typical arm's-length, commercial transaction. Therefore, EW has not sufficiently stated a plausible claim for breach of fiduciary duty. The

Motion to Dismiss of Defendant USPF is granted as to Count VI.

### III. CONCLUSION

For these reasons, Defendant's Motion (ECF DKT #11) to Dismiss the Complaint is

granted in part, as to Counts I, IV and VI, and denied in part, as to Counts II, III, and V.


**IT IS SO ORDERED.**

**DATE: March 29, 2010**


    **S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**