# EXHIBIT E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ENERGY WEST, INCORPORATED<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES POWER FUND, L.P.,<br><br>Defendant.<br><br>and<br><br>LORING BIOENERGY, LLC<br>c/o Aaron M. Pratt<br>84 Marginal Way, Suite 600<br>Portland, ME 04101 2480<br><br>New Party Defendant | CASE NO. 1:09-cv-00591<br><br>JUDGE CHRISTOPHER BOYKO<br><br><br><br>**SUPPLEMENTAL COMPLAINT**<br>**(Jury Demand)** |

Now come Plaintiffs, Energy West, Incorporated (hereinafter "EWI" or "Plaintiff") by and through its undersigned counsel, Dworken & Bernstein Co., L.P.A. and for its Supplemental Complaint against Defendants, United States Power Fund, L.P. (hereinafter "USPF") and Loring BioEnergy, LLC (hereinafter "LBE") (USPF and LBE are sometimes collectively referred to herein as "Defendants"), state as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) on the grounds that, among other things, a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, including, but not limited to, face-to-face meetings of representatives of both parties.

PLAINTIFF'S EXHIBIT A

## PRELIMINARY ALLEGATIONS

3. Plaintiff EWI is a Montana corporation which has offices located at 8500 Station Street, Suite 100, Mentor, Ohio, 44060 and does business within the State of Ohio.

4. Gas Natural, Inc. is the parent company of Plaintiff EWI and is a successor in interest to Plaintiff in connection with the transactions which are the subject of this Complaint.

5. Plaintiff's primary business is selling and transporting natural gas.

6. USPF is a Delaware Limited Partnership with its principal place of business located at One Penn Plaza, Suite 3306, 250 West 34th Street, New York, New York, 10119.

7. UPSF's primary business is loaning to and investing in power companies.

8. New Party Defendant Loring BioEnergy, LLC, is Maine limited liability company ("LBE"), with its principal place of business located at 154 Development Drive, Suite G, Limestone, Maine, 04750.

9. LBE's primary business is related to energy transportation.

### A. THE 2008 TRANSACTION:

10. In June of 2005, USPF entered into a loan transaction with LBE whereby USPF agreed to loan certain funds to LBE for purposes of developing a natural gas pipeline and a Co-Generation Power Plan (the "Project").

11. This loan transaction was memorialized by several documents executed between USPF and LBE including a Development Loan Agreement dated June 2, 2005 (the "Loan Agreement") and an Equity Option Agreement dated June 2, 2005 (the "Option Agreement").

12. After the Loan Agreement and the Option Agreement were executed, USPF distributed approximately Four Million Five Hundred Ninety-Eight Thousand Dollars

($4,598,000.00) in loan proceeds to LBE in accordance with the terms of the Loan Agreement, as amended.

13. The original maturity date on the Loan Agreement was March 15, 2006, although, based primarily upon LBE's inability to make payment by the original maturity date, the maturity date was extended multiple times.

14. In 2008, EWI and USPF commenced negotiations whereby USPF would assign or transfer its interest under the Loan Agreement and the Option Agreement to Plaintiff (the "Transaction") in exchange for monetary consideration, thereby allowing Plaintiff so step into the shoes of USPF as LBE's lender under the Loan Agreement.

15. The Loan Agreement contains a provision that requires LBE's consent in order for USPF to assign it to a third party, which consent cannot be unreasonably withheld or delayed by LBE.

16. USPF represented and stated to EWI on numerous occasions that it had the leverage to secure LBE's consent to the assignment or transfer of the Loan Agreement.

17. The Transaction was extremely attractive to EWI because once consummated it would allow EWI to take control of approximately Two Hundred (200) miles of pipeline within the State of Maine (the "Pipeline"), which EWI intended to convert to a natural gas pipeline which would allow EWI to pursue a unique untapped market opportunity in a geographical area that does not currently have access to natural gas as a power source.

18. EWI and USPF's negotiations culminated in a Term Sheet between the parties dated October 6, 2008, whereby USPF agreed to sell its rights and interests in the Loan Agreement and the Option Agreement to EWI in exchange for a payment of Six Million Dollars ($6,000,000.00),

payable partially in stock of EWI and partially by a promissory note (the "2008 Term Sheet"). A copy of the 2008 Term Sheet is attached hereto as Exhibit "A".

19. The 2008 Term Sheet also allowed for a sixty (60) day due diligence period during which EWI was permitted to conduct a due diligence investigation relating to the Project (the "2008 Due Diligence Period").

20. The 2008 Term Sheet also contained a binding "no shop" provision which stated as follows: "Upon the execution of this letter by both parties and continuing until the expiration of the 2008 Due Diligence Period, USPF shall discontinue any ongoing negotiations and discussions and shall not initiate negotiations or discussions, nor promote or encourage other persons or entities to submit proposals relating to the sale or assignment of its rights concerning LBE to any party other than Plaintiff."

21. Thereafter, in accordance with the terms and conditions of the 2008 Term Sheet, EWI commenced its due diligence investigation of the Project.

22. EWI's due diligence investigation included sending a team of employees and consultants to Maine to physically inspect the Project; an extensive review by EWI's legal team of the complete legal issues surrounding the deal and the legal documents executed between LBE and LDA; and sending representatives to Maine to meet with potential customers along the Pipeline to obtain Letters of Intent confirming that said customers would purchase natural gas from EWI once the Transaction was consummated.

23. On November 24, 2008, USPF and EWI agreed to extend the 2008 Due Diligence Period for an additional thirty (30) days through January 6, 2009.

24. At the conclusion of EWI's due diligence investigation, EWI and USPF renegotiated new terms and conditions of the Transaction and agreed to the following: EWI would

4

purchase USPF's rights under the Loan Agreement and the Option Agreement for a price of Four Million Five Hundred Thousand Dollars ($4,500,000.00), payable partially in EWI common stock and partially by promissory notes.

25. This revised deal was also contingent upon EWI obtaining LBE's consent to the transfer or assignment of the Loan Agreement to Plaintiff.

26. In accordance with its previous representation that it had the leverage to secure LBE's consent, USPF agreed and represented that it would assist EWI in negotiating with LBE to obtain its consent.

27. Thereafter, EWI and USPF did, in fact, commence joint negotiations with LBE to obtain LBE's consent to the transfer of the Loan Agreement to EWI.

28. On March 5, 2009, during the course of the aforementioned negotiations, USPF informed EWI that it had received an offer from an unidentified third party to consummate the Transaction or a similar transaction on terms and conditions that were more favorable to USPF than the terms agreed upon by EWI.

29. On March 5, 2009, USPF also informed Plaintiff that the other deal was more attractive to USPF because LBE would consent to the transfer or assignment of the Loan Agreement to the unidentified third party, but would not consent to such a transfer or assignment to EWI.

30. Although Defendant would not disclose the identity of this third party, USPF did state to EWI that the third party offer was from an affiliate of LBE and/or and affiliate of LBE's owners.

31. As a result of the foregoing offer, on March 10, 2009, USPF unilaterally terminated the Transaction with EWI.

5

32. It was apparent from Defendant's course of conduct that Defendant's sole intent and purpose during and after the course of negotiations was not to consummate a deal with Plaintiff, but only to pressure LBE and or its owners and affiliates to put together a group of investors to purchase Defendant's rights under the Loan Agreement.

### B. THE 2011 TRANSACTION:

33. Based on the aforestated facts, on March 18, 2009, EWI filed the instant action against USPF.

34. During the course of this litigation, Plaintiff learned that USPF had never consummated the Transaction with the unidentified third party discussed in Paragraph 28 above, nor had LBE paid off its obligations under the Loan Agreement. Consequently, Plaintiff and Defendant recommenced negotiations relating to the Transaction.

35. During said negotiations, USPF represented to Plaintiff that LBE was now willing become a party to a transaction between Plaintiff and USPF which would allow Plaintiff to obtain control of the Pipeline.

36. On or about January 6, 2011, USPF submitted a new proposed term sheet to Plaintiff (hereinafter "Proposed Term Sheet").

37. This Proposed Term Sheet contemplated a different transaction, than what had been agreed upon in the 2008 Term Sheet.

38. The 2008 Term Sheet involved a deal whereby Plaintiff would purchase the Loan Agreement and Option Agreement from USPF.

39. Under this Proposed Term Sheet, LBE was to assign its rights to the Pipeline to Plaintiff.

6

40. On or about March 15, 2011, representatives of Plaintiff, Defendant and LBE met to discuss the transaction proposed in the Proposed Term Sheet.

41. During that meeting, LBE specifically requested that the deal be restructured as a sublease whereby Plaintiff would sublease the Pipeline from LBE, as opposed to a direct assignment of LBE's interest in the Pipeline to Plaintiff.

42. Plaintiff agreed to LBE's request and agreed to take a sublease of the Pipeline, as opposed to taking a direct assignment of LBE's interest in the Pipeline.

43. In follow up to that meeting, on or about July 5, 2011, Plaintiff, USPF and LBE entered into and executed a new Term Sheet whereby the parties agreed that (a) LBE would sublease its right to the Pipeline to GNI, (b) LBE would transfer certain other real property, rights and permits to GNI, (c) in consideration of the foregoing, LBE would make a payment to USPF of Four Million Five Hundred Thousand Dollars ($4,500,000.00), payable partially in cash and partially in stock of GNI, and (d) in consideration of said payment USPF would release its lien on the assets being sublet and/or transferred to GNI (the "2011 Term Sheet").

44. Under the 2011 Term Sheet, Plaintiff had a due diligence period until August 19, 2011 during which time Plaintiff was permitted to conduct additional due diligence investigations relating to the Pipeline (the "2011 Due Diligence Period").

45. The 2011 Term Sheet also contained a binding "no shop" provision which stated as follows: "[GNI] shall have an exclusive due diligence period ("Due Diligence Period") beginning on the date both parties execute this Term Sheet and ending forty-five (45) days thereafter. Upon the execution of this Term Sheet by all parties and continuing until the expiration of the Due Diligence Period, LBE and USPF shall discontinue any ongoing negotiations or discussions and shall not initiate negotiations or discussions, nor promote or encourage other persons or entities to

7

submit proposals relating to the sale or assignment of the Existing Pipeline Assets to any party other than [GNI]. Additionally, during this period, USPF will not agree to sell or assign any of its rights concerning LBE to any other party."

46. Prior to its expiration, Plaintiff requested that the 2011 Due Diligence Period be extended until September 15, 2011.

47. The reason for this extension was that Plaintiff had to obtain the approval of its Board of Directors to close the transaction outlined in the 2011 Term Sheet.

48. While LBE would not agree to the extension, USPF expressly agreed to extend the Due Diligence Period until September 15, 2011.

49. USPF represented to GNI at that time that it did not matter if LBE was refusing to consent to the extension of the 2011 Due Diligence Period.

50. Thereafter, on or about August 31, 2011, Plaintiff informed USPF that its Board had approved the transaction and further stated that it was prepared to close the transaction.

51. Thereafter, USPF stated to Plaintiff that it was likewise ready to close the transaction, and, on or about September 15, 2011, USPF stated to Plaintiff in writing that it intended to close the transaction.

52. However, on or about October 14, 2011, Plaintiff was informed that LBE refused to cooperate in allowing the transaction between Plaintiff and Defendant USPF to close.

53. At this point, Plaintiff and USPF agreed that they both would be willing to go forward with the transaction outlined in the 2008 Term Sheet.

54. The 2008 Term Sheet involved a transaction between only Plaintiff and USPF, but required the approval of LBE to the assignment of the Loan Agreement from USPF to Plaintiff.

8

55. LBE was not permitted to unreasonably withhold or delay its approval of the assignment of the Loan Agreement.

56. LBE has refused to communicate with Plaintiff and/or USPF or provide approval of the transaction.

57. These actions taken by LBE, including its refusal to approve the assignment of the Loan Agreement are being done tortuously, without privilege, with the intent of interfering with Plaintiff and USPF's contract and/or prospective contractual relationship.

58. Due to LBE's unwillingness to cooperate, on or about October 18, 2011, Plaintiff informed USPF that they were willing to consummate a transaction (a) without LBE's consent, (b) without any other contingencies to closing, and (c) for the same consideration that was to be paid to USFP under the 2011 Term Sheet.

59. USPF nevertheless failed and refused to close the transaction because of LBE's refusal to provide its approval.

60. As a direct and proximate result of LBE's conduct, Plaintiff has suffered damages.

61. LBE's refusal to provide its consent is causing Plaintiff irreparable harm and entitles Plaintiff to injunctive relief.

## COUNT I: PROMISSORY ESTOPPEL - 2008 TRANSACTION

62. Plaintiff realleges and reavers each and every allegation set forth in paragraphs of One (1) through Sixty One (61) of this Supplemental Complaint as if fully rewritten herein.

63. USPF made representations to Plaintiff in connection with the 2008 Term Sheet that it had the leverage and could secure LBE's consent to the transfer or assignment of the Loan Agreement to Plaintiff.

64. The foregoing representations constitute and declare an unambiguous promise.

9

65. Plaintiff relied upon these representations and promises made by USPF by continuing to expend significant funds in connection with performing due diligence and continuing negotiations with third parties such as LBE.

66. Plaintiff's reliance of USPF's representation was reasonable and foreseeable.

67. As a direct and proximate result of Plaintiff's reliance of USPF's representations, Plaintiff has suffered injury and unjust loss as a result of its reliance upon USPF's representations and promises in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT II: FRAUDULENT MISREPRESENTATION - 2008 TRANSACTION

68. Plaintiff realleges and reavers each and every allegation set forth in Paragraphs One (1) through Sixty Seven (67) of this Supplemental Complaint as if fully rewritten herein.

69. USPF made representations to Plaintiff that it could secure LBE's consent to a transfer or assignment of the Loan Agreement to Plaintiff.

70. USPF had knowledge that this representation was false and/or exercised recklessness or utter disregard as to the falsity of the statement.

71. USPF made this misrepresentation with the intent to induce Plaintiff to rely upon the same.

72. Plaintiff justifiably relied upon the misrepresentation by expending a substantial amount of money conducting due diligence investigations relating to the Project and by continuing forward in fruitless negotiations with LBE regarding its continued involvement in the project.

73. Plaintiff suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) as a direct and proximate result of its reliance upon USPF's misrepresentation.

## COUNT III: NEGLIGENT MISREPRESNTATION - 2008 TRANSACTION

74. Plaintiff realleges and reavers each and every allegation set forth in Paragraphs One (1) through Seventy-Three (73) of this Supplemental Complaint as if fully rewritten herein.

75. USPF supplied false information to Plaintiff during the course of negotiations relating to the 2008 Transaction, *to wit:* USPF misrepresented that it could secure LBE's consent to a transfer or assignment of the Loan Agreement to Plaintiff.

76. These statements were made during the course of a transaction in which USPF had a pecuniary interest and were made to guide Plaintiff in connection with a business transaction.

77. Plaintiff reasonably and justifiably relied upon these statements by expending a substantial amount of money conducting due diligence investigations relating to the Project and by continuing forward in fruitless negotiations with LBE regarding its continued involvement in the Project.

78. USPF failed to use reasonable care or competence in making these statements.

79. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

## COUNT IV: TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP AND/OR PROSPECTIVE CONTRACT 2011 TRANSACTION

80. Plaintiff realleges and reavers each and every allegation set forth in Paragraphs One (1) through Seventy Nine (79) of this Supplemental Complaint as if fully rewritten herein.

81. Plaintiff and USPF had agreed to enter into a contract whereby Plaintiff would acquire the Loan Documents from USPF.

82. LBE had knowledge of Plaintiff's prospective contract with USPF.

83. LBE intentionally and tortuously interfered with Plaintiff's business relationship and/or prospective contract with USPF by refusing to consent to the assignment of the Loan Documents in contravention of its obligations not to unreasonably withhold or delay its approval of the assignment.

84. As a direct and proximate result of Defendant LBE's tortuous interference, Defendant USPF refused to go forward with the 2011 transaction whereby Plaintiff would acquire the Loan Documents.

85. As a direct and proximate result of the foregoing, Plaintiff has suffered damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

86. As a direct and proximate result of LBE's tortuous conduct, Plaintiff has suffered irreparable harm and is entitled to injunctive relief.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff Energy West, Inc. demands judgment against Defendants USPF and LBE as follows:

(a) for a temporary, preliminary and thereafter permanent injunctive relief restraining and enjoining Defendants, their agents, officers, servants, employees, attorneys and those persons in active concert or participation with them, from selling or transferring any direct or indirect interest in the Pipeline or in the Loan Documents to any third party except to Plaintiff;

(b) compensatory damages against Defendant USPF in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) in connection with Counts I through II of the Supplemental Complaint;

(c) compensatory damages against Defendant LBE in an amount in excess of Seventy-

Five Thousand Dollars ($75,000.00);

(d) consequential and incidental damages, including out-of-pocket expenses, attorney fees and court costs;

(e) punitive damages in an amount to be determined at trial;

(f) pre and post judgment interest; and

(g) such other and further relief as the Court may deem necessary or appropriate.

Respectfully submitted,

/s/ Richard N. Selby, II
RICHARD N. SELBY, II (0059996)
**DWORKEN & BERNSTEIN CO., L.P.A.**
60 South Park Place
Painesville, Ohio 44077
Telephone: (440) 352-3391
Facsimile: (440) 352-3469
Email: rselby@dworkenlaw.com
Counsel for Plaintiffs

## *JURY DEMAND*

Plaintiff hereby demands a trial of the foregoing action by a jury comprised of the maximum number of jurors permitted by law.

/s/ Richard N. Selby, II
RICHARD N. SELBY, II (0059996)
DWORKEN & BERNSTEIN CO., L.P.A.
Attorney for Plaintiffs

13